PETER J. WHALEN (SBN 130041)
KATHRYN C. ASHTON (SBN 193576)
**CLYDE & CO US LLP**
101 Second Street, 24th Floor
San Francisco, CA 94105
Telephone: 415.365.9800
Facsimile: 415.365.9801
Email: peter.whalen@clydeco.us
      kathryn.ashton@clydeco.us

Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK

E-filing

FILED
JUN 28 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,<br><br>    Plaintiff,<br><br>v.<br><br>MANAGED SOLUTIONS GROUP, INC., a Delaware Corporation, AKANOC SOLUTIONS, INC., a California Corporation and STEVE CHEN, an individual,<br><br>    Defendants. | Case No. CV10-02841 PVT<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

    Plaintiff Great American Insurance Company of New York ("Great American") hereby makes its complaint against Managed Solutions Group, Inc. ("Managed Solutions"), Akanoc Solutions, Inc. ("Akanoc") and Steve Chen ("Chen") (collectively "defendants") and alleges as follows:

### NATURE OF ACTION

    1.    This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Great American seeks a determination of the parties' rights and obligations under insurance policies issued by Great American to Managed Solutions with respect to the Underlying Lawsuit identified in this Complaint. A dispute exists between the

parties regarding whether there is coverage for the Underlying Lawsuit under the Great American policies. Consequently, Great American seeks declarations that: a) the Great American policies do not provide coverage for Managed Solutions, Akanoc and Chen for any of the causes of action in the Underlying Lawsuit; b) Great American has no duty to defend the defendants in the Underlying Lawsuit under the Great American policies; and c) Great American has no duty to indemnify the defendants in the Underlying Lawsuit under the Great American policies.

## PARTIES

2. Plaintiff Great American Insurance Company of New York is and at all times herein mentioned, an insurance company organized and existing under the laws of the State of New York with its principal place of business in Cincinnati, Ohio. Great American is authorized and does transact insurance business in the State of California.

3. Defendant Managed Solutions is a business incorporated in the State of Delaware with its principal place of business in the State of California.

4. Defendant Akanoc is a business incorporated in the State of California with its principal place of business in the State of California.

5. Defendant Steve Chen is an individual residing in the State of California and is the general manager and owner of Managed Solutions and Akanoc.

## JURISDICTION AND VENUE

6. This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7. An actual, justiciable controversy exists between plaintiff and defendants within the meaning of 28. U.S.C. § 2201 regarding the scope and extent of insurance coverage provided under the Great American policies, as more particularly described below.

8. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and the suit is between citizens of different states.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) as a substantial

part of the events or omissions giving rise to this action took place in this district.

## THE UNDERLYING LAWSUIT

10. The Underlying Lawsuit is an action brought by Louis Vuitton Malletier, S.A. ("Louis Vuitton") against Akanoc Solutions, Inc., Managed Solutions Group, Inc., and Steve Chen, alleging contributory and vicarious trademark infringement and contributory and vicarious copyright infringement.

11. The Underlying Lawsuit was filed on August 1, 2007, in the United States District Court, Northern District of California, Case No. 07-3952. A true and correct copy of the underlying complaint is attached hereto as Exhibit A, and is incorporated herein by reference.

12. Louis Vuitton filed a first amended complaint on July 28, 2008. A true and correct copy of the first amended complaint is attached hereto as Exhibit B, and is incorporated herein by reference.

13. In the Underlying Lawsuit Louis Vuitton alleges it is the owner of all rights in numerous trademarks which are in full force and effect and have been copyrighted with the United States Copyright Office.

14. Louis Vuitton alleges that Managed Solutions and Akanoc are Internet service providers which, among other things, operate servers hosting websites that facilitate communications between sellers of alleged counterfeit products and their customers. Louis Vuitton alleges that the counterfeiting websites offer, promote, advertise and facilitate the offer and sale of counterfeit merchandise which infringes intellectual property rights of Louis Vuitton, among others.

15. Louis Vuitton alleges that Steve Chen is an officer, owner and/or managing employee of Managed Solutions and Akanoc.

16. Louis Vuitton alleges that it repeatedly put defendants on notice of the counterfeit activity which was occurring using the host services offered by defendants. It alleges that it never granted any of the defendants a license to use, or exploit any of the Louis Vuitton intellectual properties. It alleges that the defendants have taken no steps to limit,

curtail, disable, stop or otherwise discontinue the services they provide which make the infringing activity possible. It further alleges the defendants generated revenue profit from the Internet traffic and counterfeit sales which occurred as a result of their hosting activities.

17. The Underlying Lawsuit sets forth three claims for relief. The first claim is for contributory trademark infringement. Louis Vuitton alleges the counterfeiting websites are engaged in illegal conduct including but not limited to the promotion, advertisement, offer for sale, sale and distribution of counterfeit goods in violation of the Lanham act. Louis Vuitton alleges the defendants had actual knowledge of the counterfeiting websites' illegal activities and that they disregarded the notification or otherwise consciously avoided learning about the full extent of the illegal counterfeiting and infringing activities that were continuing at the counterfeiting websites. Louis Vuitton alleges the defendants materially encouraged, enabled and contributed to the infringing conduct at the counterfeiting websites by providing, among other things, listings of websites, displaying offers for counterfeit products, facilitating communications by and between the sellers of counterfeit goods over the websites and their distributors, consumers and vendors. Accordingly, Louis Vuitton alleges the defendants bear contributory liability for the counterfeiting of Louis Vuitton's trademarks.

18. The second claim for relief is for vicarious trademark counterfeiting. Louis Vuitton alleges that the defendants have taken no steps to stop or otherwise prevent the ongoing counterfeiting at the websites hosted by defendants. Thus, Louis Vuitton alleges the defendants are vicariously liable for the damages caused to Louis Vuitton as a result of the illegal promotion, advertisement, offer for sale and/or sale of counterfeit merchandise.

19. The third claim for relief in the Underlying Lawsuit is for contributory and vicarious copyright piracy. Louis Vuitton alleges that defendants were earning revenues for hosting the counterfeiting websites for each Internet user directed to websites operated by the counterfeiting websites. It alleges the defendants had actual knowledge of the illegal acts and deliberately disregarded or consciously avoided learning about the full extent of the illegal counterfeiting and infringing activities continuing at the websites. Louis Vuitton alleges the defendants have knowingly and willfully permitted and continue to permit the counterfeiting

websites to sell and offer for sale unauthorized copies of product being the Louis Vuitton intellectual properties. It also alleges the defendants have materially encouraged, enabled and contributed to the infringing conduct at the websites.

20. The defendants brought a motion for summary judgment in the Underlying Lawsuit seeking dismissal of all the claims. By order dated December 23, 2008, the court dismissed Louis Vuitton's claims for vicarious copyright infringement and vicarious trademark infringement. A true and correct copy of the court's order is attached hereto as Exhibit C.

21. Louis Vuitton's claims for contributory copyright and trademark infringement went to trial in August of 2009, and the jury returned a verdict against the Managed Solutions, Akanoc Solutions and Steve Chen on August 28, 2009. The jury determined that all three defendants were liable for contributory trademark infringement and contributory copyright infringement. The jury awarded damages against Management Solutions, Akanoc and Steve Chen in the amount of $10,500,000 each for the claim of contributory trademark infringement. The jury awarded damages against Management Solutions, Akanoc and Steve Chen in the amount of $300,000 each for the claim of contributory copyright infringement. A true and correct copy of the jury's verdict is attached hereto as Exhibit D.

22. After the jury verdict, the defendants made timely motions for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50(a). On March 19, 2010, the court issued an order granting in part and denying in part defendants' post-trial motions and granting the underlying plaintiff's motion for a permanent injunction. The court granted the motion to dismiss the claims against Managed Solutions as a matter of law because there was no evidence that Managed Solutions sold domain names or operated the servers hosting the websites offering the counterfeit goods. The court denied the motion to dismiss the claims against Akanoc and Steve Chen because there was evidence that Akanoc, under the management and control of Steve Chen, provided servers with data storage, routers and data bandwidth to the websites and continued to host the websites after receiving notice of particular websites offering counterfeit products. Moreover, the court held that Steve Chen

could be found personally liable because he was the "central figure" in the challenged corporate activity for which Akanoc was found liable. A true and correct copy of that order is attached hereto as Exhibit E.

23. On March 19, 2010, the court entered judgment awarding statutory damages and permanent injunction in favor of Louis Vuitton and dismissing Managed Solutions. A true and correct copy of the judgment is attached hereto as Exhibit F.

24. On April 19, 2010, Steve Chen and Akanoc filed a notice of appeal of the district court's March 19, 2010 order granting in part and denying in part defendants' post-trial motions and granting plaintiff's motion for a permanent injunction. Defendant Chen and Akanoc also filed a notice of appeal of the summary judgment order of December 23, 2008 granting in part and denying in part defendant's motion for summary judgment. A true and correct copy of the notice of appeal is attached hereto as Exhibit G.

25. On May 3, 2010, Louis Vuitton filed its notice of cross-appeal. The cross-appeal is limited to the district court's order granting in part and denying in part defendants' post-trial motions and granting plaintiff's motion for permanent injunction and the corresponding judgment awarding statutory damages and permanent injunction. A true and correct copy of the notice of cross-appeal is attached hereto as Exhibit H.

## THE POLICIES

26. Great American issued general liability policies, policy no. PAC 5281196, on an annual basis to Managed Solutions Group, Inc. beginning April 15, 2004, and continuing through April 15, 2008 (the "Policies"). Each annual policy had limits of $2 million in aggregate/$1 million occurrence/$1 million personal and advertising injury limits. True and correct copies of the Commercial General Liability coverage provisions of each annual policy period are attached as Exhibits I, J, K and L, respectively.

27. As specified in the Policies, and as set forth below, the coverage that Great American agreed to provide is limited, and is subject to certain insuring agreements, definitions, exclusions and limits of coverage. The Policies all provided Commercial General Liability Coverage under Form CG 00 01(Ed. 10 01), as amended by various endorsements to

the policies. Form CG 00 01 (Ed. 10 01) provided coverage, in part, as follows:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    (1) the amount we will pay for damages is limited as described in Section III; Limits of Insurance, and

    (2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A.** or **B.** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A.** and **B.**

    b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    * * *

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABLTY**

1. **Insuring Agreement**

    a.  We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    (1) the amount we will pay for damages is limited as described in Section III; Limits of Insurance, and

    (2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A.** or **B.** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A.** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

\* \* \*

c. **Material Published Prior To Policy Period**
"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\* \* \*

i. **Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an Insured whose business is:
(1) advertising, broadcasting, publishing or telecasting;
(2) designing or determining content of websites for others; or
(3) an Internet search, access, content or service provider

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purpose of this exclusion, the places of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

\* \* \*

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. oral or written publication, in any manner, of material that violates a person's right of privacy.

   f. The use of another's advertising idea in your "advertisement; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

* * *

17. "Property damage" means:

   a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused

it; or

b.    loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or sued on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are sued with electronically controlled equipment.

28.    Beginning April 15, 2006, the following endorsement was added to the policies:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – TECHNOLOGY COMPANIES LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY COVERAGE PART

The following exclusions are hereby added to the policy:

**1.**    The insurance afforded by this policy does not apply to any "bodily injury," "property damage," or "personal and advertising injury" arising out of the Insured's rendering of or failure to render any "professional service," including, but not limited to, any "professional service" in connection with any of the following activities or operations.

\* \* \*

b.    providing, installing, maintaining, or servicing "Internet" service or "Internet" access;

\* \* \*

h.    "Internet" site design, construction, management, hosting, or consulting services;

i.    evaluating, consulting, or advising concerning "Internet" service or "Internet" access.

**TENDER AND AGREEMENT TO DEFEND**

29.    Managed Solutions, Akanoc and Steve Chen tendered the defense and indemnity of the Underlying Lawsuit to Great American on September 7, 2007.

30. Pursuant to a letter dated September 27, 2007, Great American agreed to defend Managed Solutions in the Underlying Lawsuit under a reservation of rights but declined to defend Steve Chen on the basis that he was not listed in the policy application as an executive officer for Managed Solutions. Great American also declined to defend Akanoc on the basis that it is not an insured under the Policies. Great American reserved all of its rights under the policies and reserved its right to seek reimbursement of any defense costs incurred for non-covered claims. Great American paid the reasonable fees and expenses incurred by independent defense counsel on behalf of Managed Solutions and Steve Chen, in his capacity as an officer or director of Managed Solutions. A copy of Great American's initial reservation of rights letter is attached and incorporated hereto as Exhibit M.

31. After the first amended complaint was filed in the Underlying Lawsuit and the motion for summary judgment was fully briefed to the court, Great American issued another reservation of rights letter to defendants on November 14, 2008. That letter reiterated that Great American was defending Management Solutions under a complete reservation of rights, including the right to withdraw from the defense and seek reimbursement of defense costs. A true and correct copy of that letter is attached as Exhibit N.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment – No Duty To Defend Or Indemnify Managed Solutions)**

32. Great American hereby incorporates and realleges allegations in Paragraphs 1 through 31 as if fully set forth herein.

33. There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Great American and all Defendants concerning whether the Great American Policies provide coverage for the Underlying Lawsuit.

34. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Great American requests that the Court declare the following:

    a. That there is no "property damage" or "bodily injury" coverage under the Great American Polices with regard to the Underlying Lawsuit because there is no alleged claim of "property damage" or "bodily injury" against Managed Solutions.

b. That there is no "property damage" or "bodily injury" coverage under the Great American Policies with regard to the Underlying Lawsuit because there is no alleged "occurrence."

c. That there is no "personal and advertising injury" coverage under the Great American Policies because the claims remaining at issue in the Underlying Lawsuit do not allege "personal and advertising injury" against Managed Solutions.

d. That any "personal and advertising injury" coverage under the Great American Policies is excluded by the "knowing violation of rights of another," "material published prior to policy period," "infringement of copyright, patent, trademark or trade secret," and/or "insureds in media and internet type businesses" exclusions.

e. That coverage for any of the claims remaining at issue in the Underlying Lawsuit is excluded under the 2006-2008 Policies by the "technology companies liability" exclusion.

f. That because Managed Solutions is not entitled to any coverage under the Great American Policies for the claims remaining at issue in the Underlying Lawsuit, Steve Chen is also not entitled to coverage under the Great American Policies with respect to his liability as an officer or director of Managed Solutions.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Defend Or Indemnify Akanoc Solutions)

35. Great American hereby incorporates and realleges allegations in Paragraphs 1 through 34 as if fully set forth herein.

36. There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Great American and Management Solutions concerning whether the Great American Policies provide coverage for the Underlying Lawsuit.

37. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Great American requests that the Court declare the following:

a. That Akanoc Solutions is not an insured under the Great American Policies and, thus, Great American has no obligation to defend or indemnify Akanoc Solutions for the Underlying Lawsuit.

b. That to the extent Akanoc Solutions is determined to be an insured under the Great American Policies, that there is no "property damage" or "bodily injury" coverage with regard to the Underlying Lawsuit because there is no alleged claim for "property damage" or "bodily injury" against Akanoc Solutions.

c. That to the extent Akanoc Solutions is an insured under the Great American Policies, that there is no "property damage" or "bodily injury" coverage under the Great American Policies with regard to the Underlying Lawsuit because there is no alleged "occurrence."

d. That to the extent Akanoc Solutions is an insured under the Great American Policies, there is no "personal and advertising injury" coverage under the Great American Policies because the claims remaining at issue in the Underlying Lawsuit do not allege "personal and advertising injury."

e. That to the extent Akanoc Solutions is an insured under the Great American Policies, any "personal and advertising injury" coverage under the Great American Policies is excluded by the "knowing violation of rights of another," "material published prior to policy period," "infringement of copyright, patent, trademark or trade secret," and/or "insureds in media and internet type businesses" exclusions.

f. That to the extent Akanoc Solutions is an insured under the Great American Policies, coverage for any of the claims remaining at issue in the Underlying Lawsuit is excluded under the 2006-2008 Policies by the "technology companies liability" exclusion.

g. That to the extent Akanoc Solutions is not entitled to coverage under the Great American Policies, either because it is not an insured under the policies and/or because the claims remaining at issue in the Underlying Lawsuit are not covered, Steve Chen is also not entitled to coverage under the Great American Policies with respect to his liability or alleged liability as an officer or director of Akanoc Solutions.

### THIRD CAUSE OF ACTION
(Declaratory Judgment - Right Of Reimbursement Pursuant To *Buss*)

38. Great American hereby incorporates and realleges the allegations in Paragraphs 1 through 34 as if fully set forth herein.

39. Defendants in the Underlying Lawsuit requested that Great American provide them with a defense in the Underlying Lawsuit. Great American agreed to provide a defense to Managed Solutions and provided that defense pursuant to a full and complete reservation of rights to dispute coverage and seek reimbursement of defense costs.

40. Great American is entitled to seek reimbursement for any fees or costs relating to the Underlying Lawsuit which were incurred in defending claims and Great American is seeking reimbursement of defense costs from Managed Solutions of all defense fees and costs incurred since May 3, 2010.

41. An actual controversy now exists between Great American and Managed

Solutions concerning whether Great American has the right to seek reimbursement for any defense fees and costs which have been incurred in defending Managed Solutions.

42. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Great American seeks a judicial determination that it has the right to seek reimbursement for defense fees and costs incurred in defending Managed Solutions since May 3, 2010.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Great American Insurance Company of New York prays as follows:

1. For a judgment declaring that the Great American Policies do not provide coverage for the claims remaining against defendants in the Underlying Lawsuit;

2. For a judgment declaring that Great American has no duty to defend defendants in the Underlying Lawsuit;

3. For a judgment declaring that Great American has no duty to indemnify the defendants in the Underlying Lawsuit;

4. For a judgment against Managed Solutions, according to proof, for fees and costs incurred by Great American to defend Managed Solutions since May 3, 2010;

5. For such other and further relief as this Court may deem just and proper.

Dated: June 28, 2010

**CLYDE & CO US LLP**

By: _____
Peter J. Whalen
Kathryn C. Ashton
Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY

And

**MEAGHER & GEER, P.L.L.P**

Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY